Thank you. Good morning. May it please the court. I'm Jeffrey Ehrlich for the appellant. This appeal raises a very, very narrow issue, which I think is framed very well in the order of the District Court granting the motion for summary judgments. It's in the second volume of the excerpt of record at page 306. And this order was actually drafted by counsel for UNIVERSAL. And on the fourth paragraph of the conclusions of law, the court states that it further, it is well established under California law that an insured that unilaterally settles a suit in which it is being defended by its insurer, as Salta did, does not have an actionable claim against its insurer for recovery of the settlement. The converse of that is also true. If the policyholder is not being defended, California law gives the policyholder the right to settle the case and pursue a claim for reimbursement. And that frames the issue, which is whether there is a triable issue of fact, in this case, on whether UNIVERSAL's delays in taking over the defense and in paying the attorney's fees would allow a reasonable fact finder to determine that there was a breach of the duty to defend. But is there any case defining the scope of the insurer's duty to defend which it involves an insured, where the insurer has agreed to allow the insurer to select his own attorney? In this case, he spoke of delays and so forth. But he had his own attorney. He did have his own attorney. But the cases are clear that the duty to defend in California rises immediately upon tender. And this is not a reimbursement policy. This is a policy that gives control of the defense to the insurance company and obligates them to take control and to defend. And what did they do? The tender was on October 12, 2001. And four days or six days after the tender, UNIVERSAL writes back and says, we have your tender. You'll hear from us soon. And then four months later, in February 12, they finally, UNIVERSAL writes and says, okay, we're going to reserve our rights, but we will defend you. Do you have any case that suggests that that kind of a delay is sufficient to show that they have not performed their duties properly? I mean, there are cases in the treatises and in the reply brief that say that an unreasonable – I mean, I don't have a case that says X amount of time is conclusively presumed. I think it's a tribal issue of fact that has to be presented so that the jury would decide whether it was a reasonable delay or an unreasonable delay and whether there was a breach. I mean, this delay extended not just for the four months for when UNIVERSAL says, okay, we'll take over. Then UNIVERSAL does nothing after they send the letter saying – But UNIVERSAL has paid you what, half a million dollars? Yes. Well, that's kind of difficult to say that the insurance company ignored you if they sent you a check for $500,000 in attorney's fees. I have to respectfully disagree. If you look at the chronology of when that check happened, when that check was tendered – Those were two checks, is that right? Yes. We had a $100,000 check on October 14th. And we have a subsequent check in November? No, in January 9th of 2003. There was correspondence in November, I think, that indicated that they would be paying the fees and there was some question. They told you that in December they would start paying you at the $150 rate. Yes, there was – In November they told you they would pay – I mean, $100,000 is not insignificant, I assume, counsel. It is not insignificant. Well, it's not where I come from. It was 20 percent of what was already owed with no assurance of when the balance would be paid or when the balance would be paid. Well, they had indicated that they would be paying the bills. Well, does it matter whether it's General Motors that they're insuring or an indigent individual? Should we look at that? Does it matter whether – I mean, not paying the lawyer for six, eight months could be a serious problem to someone without funds. It's not a particularly serious problem for a wealthy corporation. Is that a relevant factor? I don't think it is. I think that the obligations that an insurance company has are defined by the policy and the promises it makes in the law. And that I don't believe that this policy was underwritten or priced in a way that it was the wealthy individual policy and that because we understand that you have substantial means, we're going to give you less service or take our responsibilities differently and you'll pay less for it. I mean, the policy was priced. The duties are specified. In the Cransco case, the California Supreme Court rejected the idea of reverse bad faith, in essence saying that you could offset an insurance company's obligations of the breach of duty of good faith and fair dealing against the insurer's, the policy holder's breach. Counsel, the chronology here, though, is very troubling because Universal sends a check for $100,000 in October. Yes. They follow that up three weeks later with a letter saying we're reviewing your bills, we're going to make substantial additional payments in the near future. Yes. I assume that you would like to rely on that at that time. I don't see any evidence that your client went back to Universal and said, don't bother, we've decided to pursue this on our own. I think you were probably welcoming of this letter, weren't you? I mean... Counsel, is there any reason for you not to want Universal to pay your bills? No, they wanted the bills. The letters from counsel were saying, if they're in the record, please pay the bills. They're in the same letter. Universal says that it will let Russ continue to defend the action at Universal's expense. And then it told you that they were going to rely on their 2860 rights and in December would start paying it $150 an hour, but they would pay the bills that had been submitted at that point. But they hadn't paid the bills, Your Honor. Well, they paid $100,000 and said they would pay them in the near future. I think... They send you a letter in January. They send you a fee or, I'm sorry, additional payment in January. And it's not until January that you come back to Universal and say, well, you've defaulted on all your arrangements, so we decided not to take your money. And by the way, back in November, just two weeks after, three weeks after you sent us a letter telling us you were going to pay the rest of our bills, we settled the case. And now we want you to pay for the settlement. The chronology is clear. I can't say it's terribly favorable to you. Well, I don't... With respect... Tell me why it is. I don't know. I won't say the chronology. Let me just answer one question first. What was the date that you first advised the insurance company of the amount of the bill, of the $500,000? I think, Your Honor, that it was sort of incremental, that Mr. Russ, who was counsel for SALTA, was requested to send his bills on June 25, 2002. That was eight months after the defense was tendered. And then he sent an itemized statement for fees that had been accrued through May 31 of $297,000. And when did he send that? That was on May 31. So that was essentially eight months after the tender. Well, but it's not the company's fault if nobody sent him a bill. Well, I think it is the company's fault. I think as soon as... Did the company issue come out and say, we insist you give us a bill? I think the company has to be involved in defending the case. They've got responsibility. Well, let's just assume. All right. So he sent them a bill for almost $300,000 in May. Yes, and then... And what happened about the payment of that bill between then and... When was the $100,000 paid? October 14. And then in the meantime, there were further bills sent. Fees incurred in June was sent of $133,000. So the first payment is made on October 14, 2002. It's a partial payment. It represents about 20% of the fees that had already been accrued. But it is a payment with the promise to pay the bill. This goes back to my original question. If the insurer is doing the defense, you would expect them to be proactive. But when they hired their own lawyer, in that case it seems to me just the opposite. In terms of what you would expect? I would think that the insurance company still has to be in contact with the lawyer, still has to know what's going on, still has to participate in settlement negotiations and explore settlement negotiations. Well, she did send somebody over to one of the earlier settlement conferences. She left early. Yes. She had no settlement authority and she left early. But she was there. There was no action item at the time. But she was in attendance at the settlement conference. For the first day and declined to come back for the rescheduled conference. She should be in contact. But at that point, Universal has indicated that they're interested. You've had an exchange of letters. It's not until months later that you even get close to the settlement. The only point that I can make... Counsel, did your client cash the check for $100,000? I believe so. So you took the money from the insurance company? Yes. The SALTA had paid the lawyers. The money was owed. The only point is that I don't believe that the court can review the timeline as a matter of law and say there was no possibility as a matter of law that a jury could find that this conduct constituted a breach. If the court disagrees, then it's going to have to affirm. I understand that. But I don't think that as a matter of law there was no finding here by the trial court. Let's see if I understand your point. You have two delays, essentially, that you say are enough to raise an issue of fact as to whether it constitutes a failure of their duty. One is the delay in responding and agreeing to provide counsel. And that delay is how many months? Four months. And the second delay is a delay in payment of the bills, which the first bill was May and the first payment was October, which is about five months. Yes. And that was a partial payment. And the question is, do those two facts raise a sufficient question that a jury should be asked to decide whether the insurance company breached its duty? The only addition I would say is that the October payment was not a full payment. I understand. It was a partial payment. Right. And that's right. That's correct. You frame the issue the way I would frame it. I think that it does raise a trial of issue of fact. And if it does, then this case has to be remanded. Put a jury on that basis. All right. I will try to be your opponent. Thank you. Good morning. May it please the Court, I'm Susan Walker, counsel for Appley Universal Underwriters Insurance Company. This is an opportune moment to address the Court because I think what needs to happen here is to have the issue correctly framed. And that is, under California law, there's a bright line rule. And the rule is, without a denial of coverage, without a refusal to defend, an insured cannot settle a case without its insurer's consent and bind the insurer to that settlement. That's why there's no question of fact here. But isn't the... Even if the insurance company has breached its duty before and has failed to provide a defense in a timely manner and failed to make the payments? Your Honor, the law is very clear. What allows an insurer to ignore the no-action clause and the no-voluntary payment clause is only a denial of coverage and a refusal to defend. And we've got cases where the insured has tried tactics like this. There's no doubt about it. What makes this case clear for the district court and clear for this court is there was no denial of the duty to defend. Universal could not have been clearer that it accepted its duty to defend. Well, let's assume for the moment, just to get the legal point, let's assume that there's a failure to defend promptly and there's a failure to pay bills in a reasonable time. Is there a case that says that that doesn't relieve... Yes. Yes, there is. So what is that case? It's discussed in our brief, the Lowe v. Golden Eagle Insurance Company case, 110 Calap 41532. And what happened in that case is that the insured also was represented by counsel at the time of the suit and defense counsel, as was Salta, and tendered the defense to the insurance company. And the insurance company took a while to accept the defense. And the insured then settled the case and tried to say, well, you know, we were abandoned. They didn't accept quickly enough. And the court reiterated the bright-line rule. No, there has to be a refusal to defend, not some quibble about the time that it took for the company to respond and say, yes, we agree, we are defending you. So that case is, I think, right on point on that issue. Another case that Salta cannot distinguish that also addresses this bright-line rule is the Safeco case. In the Safeco case, the insurance company was defending the insured and the insured went ahead and entered into a settlement without the insurance company's consent. And it tried to argue, well, we got inadequate defense counsel. We didn't like our defense counsel. They weren't doing a good job. So we went out and settled the case. The court said, no, the rule is clear. The only time that the no-action provision and the no-voluntary payment provision can be set aside is when the company has completely denied a defense. And that didn't happen in Safeco and it didn't happen in the Globe v. Golden Eagle. And it didn't happen here. And what's, I think, instructive is this bright-line rule, counsel doesn't disagree that that's the rule. Counsel is trying to come within it with less than an absolute denial of the duty to defend. Well, the case that you say sets the legal standard, Lowe v. Golden Eagle, it starts out on this, California law enforces no-voluntary payment provisions in the absence of economic necessity, insurer breach, or other extraordinary circumstances. They are designed to ensure that responsible insurers that promptly accept the defense tended by their insurers, thereby gain control of the defense and settlement. Your Honor, you asked for a case that addressed this issue. There's discussion in the Lowe case of the duty to defend in other contexts, but when the case gets into addressing the insured's conduct of having settled without the insured's consent, that's where it makes the statement. Of the applicable bright-line rule that a company cannot be bound by a settlement entered into without its consent when it's defending. This bright-line rule is discussed by the California Supreme Court in several cases. I cited Lowe to you as an example where the company tried to justify its conduct in settling without the insurer's consent by saying they didn't accept quickly enough. That argument was flatly rejected. And I think the pin site for you would be at 1546. So here, SALTA doesn't disagree that this is the rule. What it argues is this trying to say some other type of conduct comes within the rule. And there simply is no case that has allowed an insured to settle without the insurance company's consent, bind the company to that with less than an absolute denial. And it makes sense because these policy provisions, no voluntary payment and the no action, which requires that the insured's liability be decided by trial, it makes sense because if the insurance company has agreed to defend, there is no injury from these types of conduct that the insured is complaining about that warrants settlement. Unless and until there's an excess judgment, the insured has not been injured by the conduct. And this is part of the policy behind the bright-line rule. So for example, even in the context where an insurance company is defending, a settlement offer is made within policy limits and the company decides to turn down that offer. Well, the law is equally bright-line and clear. There's no cause of action unless and until there's an excess judgment. What's the reason for that? There's only a potential for injury. It could be that the trial would turn out there's a defense verdict. It could be that the trial would turn out damages are less than the settlement offer. So California law is very clear that unless and until there's an excess judgment, this type of whether an insurance company should accept a settlement offer or not is not actionable because it may never result in an injury to the insured. And that's exactly what happened here. I think as far as the... Well, I think counsel's only argument, as I understood it, is that they're relieved of the obligation because of the delay. And your answer is, cases say the delay is irrelevant as long as you ultimately defend them. My answer is two-fold, that the bright-line rule says you cannot settle without your insurer's consent and bind the insurer unless there's an absolute denial of coverage. There's a litany of cases for that rule. That's what I said. You're saying that it doesn't matter whether you have breached the contract in failing to provide a prompt defense or failing to promptly pay the bills. That's all irrelevant. They still have a duty. That's correct. You have a fundamental legal argument with your opponent. Well, there's no case that the opponent has cited. No case. In the rebuttal time... No, I think what he cites is general statements and propositions in cases that just say there is a duty to promptly defend and a duty to act in a prompt manner. He says if you breach that duty, that relieves the insured of its obligation not to settle. And you say that breach would not? The law is quite to the contrary, and like I say, this is not the first insured to try this kind of an argument. That's what I was trying to find, whether there's a case that says even where there's a failure to defend promptly, as long as they defend ultimately. I think Lowe says that, and I think another case that is very close to this is the Safeco case. Like I said, in Safeco, the insured argued that the defense was inadequate. And they said this is tantamount to an abandonment. If you give us inadequate counsel, this is tantamount to an abandonment. And the Safeco court quoted the language that says, no, you can't use abandonment loosely. Abandonment means a denial of coverage. It doesn't mean inadequate counsel or any other quibble. I think the important thing to note here, too, is that on this record, Solta stipulated that the timing of the payments had nothing to do with its decision to settle. This case is very close to the Hamilton case in that regard, too. At Mr. Solta's deposition, his counsel instructed him not to answer questions about net worth and stipulated that the payment of the bills had nothing to do with the decision to settle. And that's quite clear. I think that counsel, on the record, the timing has been off by a few months in the insured's favor. And in fact, when you look at the dates, what has happened is this insured had defense counsel, defended the action for several months, then decided to tender. The letter that acknowledged the tender in October said, we understand you're being defended, we will analyze this and we will get back to you. The insured elected to pay all its defense costs and then submit for reimbursement. The first bills were not sent until actually June 28th. The suit was filed in July of 2001. The bills were sent at the end of June in 2002. That's nearly a year later. And by that time, they're quite voluminous and the company begins to analyze them. That's just the first batch that amounts to 300. As it's doing that, more bills are submitted that again, have already been paid. I mention this point because here, I think it's significant that there's absolutely no causal connection either between this purported delay in reimbursing and the decision to settle. That's emphatic on the record. They're bound by that stipulation. The other point I'd like to make to follow up on the court's observation, the insured cashed the $100,000 check and moreover, it cashed the $400,000 check. And even after the settlement, it submitted more bills and was reimbursed further defense costs. There never was a denial of the duty to defend and the insured never took the position that it had been denied a duty to defend. It accepted the defense cost payments and asked for more. So this case clearly, I think, comes within that bright line rule that absent a denial of coverage, the insured cannot violate the no action provision, the no voluntary payment provision and bind the insurance company with a settlement that it did not consent to. Thank you, Kath. We'll give you two minutes if you want. I think I have that much. Thank you. I have to disagree. I can't imagine that this court could decide a case in a right or rule of law that said regardless of whether the carrier breaches in any case, as long as it says it's going to defend, then it is defending. That isn't the law. And the low case that the court read said absent breach. I think that there's no bright line test. The cases that counsel cites are explained simply by a finding that the court didn't find there was a breach of the duty to defend. When there's no breach of the duty to defend, then the rules that counsel cites are appropriate. The no action clause is binding. When there is a breach, then it's not. She cited the Safeco case. In the California Reporter, I think I'm reading it on page 84, second 43, it says, neither the adequacy of the representation nor the effectiveness of the defense are relevant to the question whether the insurer can enter into a binding settlement agreement without the insurer's consent. It seems to me to be a very bright line rule. Well, I think as I read the Safeco case, the court is saying, you haven't shown there was a breach of the duty to defend. By saying you weren't happy with your lawyer, you didn't think they were adequate, unless you can show there was a breach of the duty, then you can't settle the case out. Are you claiming here that there was an outright refusal to defend? An outright refusal? No, they never refused. They said from the beginning, we will defend you. Because their words that they were willing to defend are one thing. $100,000 plus $400,000 are more than words. Well, it is, but the $400,000 didn't come until January. Until January, the following day, Mr. Rust says, well, you're still contractually obligated, and by the way, just shortly after you sent us your last letter, we went ahead and settled this case without you. We settled the case three weeks after Universal says, we've got more money coming to you. Please let us know if there's any developments. I think that the issue is whether they breached their duty by not paying sooner, not by looking. On the reply brief, on page 13, we cite the Shade Foods versus Innovative Products, and the court says that a belated offer to pay costs of defense can mitigate damages that will not cure an initial breach of the duty. So the question is, sure, months and months later, they finally say, you're right, here, we'll pay. Does that mean there was no breach? I think, ultimately, whether there was a breach or not is a tribal issue of fact, and this is not a summary judgment case. Thank you. Thank you, sir. Case just argued. We'll be submitting.
judges: Reinhardt, D.W. Nelson, Bybee